ARCHER & GREINER, P.C.  
1211 Avenue of the Americas  
New York, New York 10036  
Tel: (212) 682-4940  
Allen G. Kadish  
Harrison H.D. Breakstone  
Email: akadish@archerlaw.com  
       hbreakstone@archerlaw.com  

-and-

1025 Laurel Oak Road  
Voorhees, New Jersey 08043  
Tel: (856) 795-2121  
Christopher M. Terlingo (*pro hac vice* pending)  
Email: cterlingo@archerlaw.com  

*Counsel for Penns Grove Apartments, LLC*

Hearing Date: March 26, 2025  
Hearing Time: 10:30 A.M.

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
---------------------------------------------------------------x

In re:

PENNS GROVE VENTURES, LLC,

      Debtor.

---------------------------------------------------------------x

Chapter 11

Case No. 25-40440 (JMM)

**REPLY OF PENNS GROVE APARTMENTS, LLC**  
**IN SUPPORT OF MOTION TO DISMISS CASE OR IN THE**  
**<u>ALTERNATIVE FOR RELIEF FROM THE AUTOMATIC STAY</u>**

TO THE HONORABLE JIL MAZER-MARINO,  
UNITED STATES BANKRUPTCY JUDGE:

      Penns Grove Apartments, LLC ("PGA"), by its counsel, Archer & Greiner, P.C., as and for its motion (the "Motion") for an order, dismissing the Debtor Penns Grove Ventures, LLC's (the "Debtor" or "Ventures") bankruptcy case pursuant to 11 U.S.C. §1112(b), or, in the alternative, for an order granting relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2). In further support of the Motion, and in response to Debtor's opposition filed on March 19, 2025 (Doc. No. 14), PGA respectfully represents as follows:

## ARGUMENT

1. Debtor's opposition to the Motion makes clear that: (1) there is no asset in the bankruptcy estate capable of supporting a reorganization, not even the $550,000 of deposit funds held in escrow, because entitlement to those funds is exclusively that two-party dispute between Debtor and PGA that the New Jersey litigation was mere days from deciding; and (2) Debtor seeks to utilize this Court as a second-bite tribunal to relitigate the New Jersey court's prior discharge of Debtor's former *lis pendens* and to resuscitate and revise the terms of the parties' long-lapsed sale contract.

2. The basis of Debtor's opposition to this Motion is an alleged "subjective and objective basis for believing that it can reorganize through the assumption and closing on the PSA . . . ." (Opposition, at ¶5). There is no reasonable objective basis for such a "belief." Indeed, the New Jersey court has already determined there is no circumstance in which Debtor can close on the PSA. The New Jersey court's ruling was clear that "there is no term in this contract that would require the transfer of title if [Debtor is] successful . . . the Court cannot specifically require [PGA] to transfer title to [Debtor] under any interpretation of the contract, even looking at the case in the light most favorable to [Debtor] . . . ." (Kesselhaut Declaration, Exhibit 15, at T32:9-11, 18-22). The court continued to state: "I understand the importance of this decision because it allows [PGA] to go forward to market the title – market the property and perhaps opens it up to – this affects a potential buyer and their rights to the property as well." (*Id.*, at T32:23 – 33:2). Debtor acknowledges that following entry of the New Jersey court's September 2024 order discharging its *lis pendens* "PGA was no longer barred from attempting to sell the Property to a third-party, subject to claims by the Debtor for monetary damages."[1] (Opposition, at ¶10).

---

[1] Debtor's opposition gives this Court the impression there is a contract right to close that is still alive and judicially enforceable, and that Debtor can challenge as interlocutory the *lis pendens*

3. As set forth in the Declaration of Matthew Kesselhaut (the "Declaration") submitted in support of PGA's Motion, PGA did exactly what the New Jersey court allowed, ultimately entering into a new sale agreement for the Property with a third party in December 2024. PGA and the new buyer are currently engaged in due diligence efforts with regulators, including the New Jersey Housing and Mortgage Finance Agency ("NJHMFA"), who agreed to allow a new buyer to present to its Board only after reviewing the New Jersey Court's September 27, 2024 Order and comments on the record.

4. Therefore, any alleged potential right in the primary asset Debtor claims supports this petition terminated conclusively – at the very latest and giving Debtor the benefit of every doubt – in December 2024, well before Debtor filed this petition on January 28, 2025. "When a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow." *In re Butchman*, 4 B.R. 379, 381 (Bankr.S.D.N.Y.1980) (holding as outside the bankruptcy estate property sold mere hours before the bankruptcy petition was filed); *see also In re Island Helicopters, Inc.*, 211 B.R. 453, 464-66 (Bankr. E.D.N.Y. 1997) (finding debtor had no cognizable property interest in subject real property when it filed for reorganization under Chapter 11 and dismissing petition for bad faith). Moreover, as the Debtor points out, its claims for any alleged monetary damages resulting from

---

ruling that found the contrary. If Debtor wished to challenge the propriety of that ruling, its remedy under New Jersey law was to seek leave of the Appellate Division to file an interlocutory appeal, or raise the issue in conjunction with the appeal of a final judgment. The remedy is not to relitigate in this Court. Moreover, the Debtor's Schedule A/B indicates that the PSA is its asset and estimates its value at the purchase price of $17,500,000. That is patently false. The New Jersey court's ruling made clear Debtor has no cognizable interest in the Property under the terms of the PSA. Debtor's only potential interest is in the $550,000 of deposit funds, entitlement to which is being actively litigated in New Jersey.

its own loss of the PSA remain pending in the New Jersey litigation, where the case progressed beyond the end of discovery and was three (3) days from PGA's unopposed summary judgment motion being heard (after the objection period expired).

5. The Debtor's professed "belief" that it can reorganize by closing on the PSA nearly a year and a half after the October 20, 2023 Closing Deadline passed is also belied by its admission in its first day declaration that it did not receive consent to close from the NJHMFA by the Closing Deadline. (Debtor Declaration, ¶7). That Debtor in its own telling did not have the NJHMFA's consent to close the "time of essence" PSA by the as-extended deadline nearly a year and a half ago, and still does not have such consent or any path by which to attain it, further undermines its current, eleventh-hour claim that it can close on the purchase.

6. Debtor's declaration further acknowledges its inability to credibly claim an interest in closing the PSA by stating that any such possibility would be "subject to a grant of an extension of the closing date and a reasonable reduction in the purchase price . . . ." (*Id.*, ¶9). The Court should not accept Debtor's invitation to resuscitate and rewrite the terms of the parties' former agreement, thereby prejudicing the reasonable expectations of PGA and a third party, based merely on Debtor's unfounded "belief" that it could somehow now close on the Property, despite being nearly a year and half out of contract and the Property being under contract with a new buyer that is actively before the same regulators Debtor would need approvals from (and failed to secure previously). There is no reasonable means of closing disclosed as assets in the bankruptcy schedules, so the Debtor's arguments to the Court are belied by its sworn filings and beg the question whether they are sanctionable.

7. In short, the PSA is long terminated. As the New Jersey court already held in discharging the ill-grounded *lis pendens*, the only asset here is a fight over the $550,000 deposit

funds, and the New Jersey court was only three days from hearing an <u>unopposed</u> dispositive motion addressing that very issue. This petition is simply a last-ditch attempt to avoid that forum and prevent the New Jersey court from entering another adverse ruling against Debtor, which would dispose of the remaining issues between it and PGA. Under governing case law as set forth more fully in PGA's Motion, this use of the bankruptcy process is in bad faith and warrants dismissal of the case or, in the alternative, at the very least, relief from the automatic stay to allow the New Jersey litigation to proceed to and through judgment.

**WHEREFORE**, PGA respectfully requests that the Court (i) dismiss the Bankruptcy Case, or in the alternative (ii) grant PGA relief from the automatic stay to allow the New Jersey Litigation to go forward and PGA's sale of the Property.

Dated: New York, New York
March 24, 2025

ARCHER & GREINER, P.C.

By: s/ Allen G. Kadish
    Allen G. Kadish
    Harrison H.D. Breakstone
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com
       hbreakstone@archerlaw.com

-and-

Christopher M. Terlingo (*pro hac vice* pending)
1025 Laurel Oak Road
Voorhees, New Jersey 08043
Tel: (856) 795-2121
Email: cterlingo@archerlaw.com

*Counsel for Penns Grove Apartments, LLC*